STATE v. MINNEAPOLIS MILK COMPANY and Another.[1]

December 12, 1913.

Nos. 18,348, 18,349—(7, 8).

**Indictment.**

1. Matters of description or inducement need not be stated with the same particularity in an indictment charging the commission of a crime, as the facts constituting the essential elements of the crime itself are required to be stated.

**Same — combination to fix prices of merchandise.**

2. An indictment under section 5168, R. L. 1905, charging that defendants, several persons and corporations, were "jointly and severally" engaged in a certain occupation, and in violation of the statute formed a combination for the purpose of increasing the price of their products, construed and *held*

1 Reported in 144 N. W. 417.

to charge that defendants were to some extent independent dealers, and not jointly associated in business as one concern.

**Construction of statute.**

3. The language of a statute is to be construed in harmony with the ordinary rules of grammar, except only when such construction will lead to a result obviously contrary to the intention of the legislature.

**Combination to fix prices — domestic corporation.**

4. For the violation of sections 5168 and 5169, R. L. 1905, by entering into a combination with others to raise the price of commodities offered for sale by those forming the combination, the domestic corporation is not subject to the penalty imposed by section 5168, but only to the penalty of forfeiture of its charter as prescribed by section 5169.

**Penalty for violation.**

5. The original statute, chapter 359, Laws 1899, imposed both fine and forfeiture of charter but the revision of 1905, (sections 5168, 5169) changed the statute in that respect, thereby making the penalty of forfeiture of the charter the exclusive punishment as to domestic corporations.

**Defense against statute.**

6. A violation of the statute by the formation of a combination to do the acts prohibited cannot be excused by facts tending to justify the act, and which would have been proper and legal had the members thereof acted independently of the combination.

**Violation of statute.**

7. A combination of several persons and corporations, all independent dealers in milk and cream, to raise and increase the price thereof, is a violation of the statute, though the increased price was necessary to afford them a profit.

**Expert witness — cross-examination.**

8. The credibility of an expert witness is ordinarily to be tested by his cross-examination, and though it may be proper to do so by the testimony of another expert specially qualified in respect to the subject-matter, the extent to which the examination of such other expert may be carried rests, as in the case of cross-examination, in the sound discretion of the court.

**Evidence — rulings of trial court.**

9. Evidence *held* to support the verdict, that no errors were committed by the trial court in its rulings upon the admission or exclusion of evidence, or in its charge to the jury.

The Minneapolis Milk Co. and 13 others were indicted by the grand jury for entering into a combination in restraint of trade,

tending to fix the price of milk and cream and to prevent competition in the purchase and sale thereof. The milk company and Albert R. Ruhnke demanded a separate trial and were tried before Jelley, J., and a jury and convicted. A fine of $3,000 was imposed on the milk company, and a fine of $3,000 upon defendant Ruhnke, who was sentenced, in case of default in payment, to be confined in the common jail of the county for a period not to exceed three years. From orders denying new trials, both defendants appealed. Affirmed.

*Brooks & Jamison,* for appellants.

*Lyndon A. Smith,* Attorney General, *James Robertson,* County Attorney, *Mathias Baldwin* and *John F. Bonner,* Assistant County Attorneys, for respondent.

BROWN, C. J.

Defendants with other persons and corporations were jointly indicted by the grand jury of Hennepin county, and thereby charged with a conspiracy to raise the price of milk and cream in violation of section 5168, R. L. 1905. A separate trial was had as to defendants Ruhnke and the Minneapolis Milk Co., a corporation, a verdict of guilty was returned by the jury, and defendants appealed from orders denying their separate motions for a new trial.

The assignments of error present the questions: (1) Whether the indictment states facts constituting a public offense; (2) whether the defendant corporation is indictable under the particular statute, and subject to the fine imposed by section 5168; (3) whether there were any errors in the admission or exclusion of evidence on the trial below, or errors in the instructions or refusals to instruct the jury; and (4) whether the evidence is sufficient to sustain the conviction of either defendant. We dispose of these questions in the order stated.

1. The statute upon which the indictment is founded, speaking generally, provides that any person or association of persons who enter into any pool, trust, agreement, or combination, with any person or association, corporate or otherwise, in restraint of trade, which tends in any way or degree to limit, fix, control, maintain or regulate the price of any article of trade bought and sold within the

limits of the state, or which limits and prevents competition in the sale or purchase thereof, or which tends or is designed so to do, shall be guilty of a felony and punished by fine or imprisonment as therein provided. Section 5168, R. L. 1905.

Six separate corporations and eight individuals were accused by the indictment of the violation of the statute. It is charged by the indictment that on the twenty-ninth day of September, 1912, at Minneapolis, this state, the defendants controlled and did a large percentage of the trade in milk and cream in said city, and that they "jointly and severally" bought and sold large quantities of such milk and cream, and were able to limit, control and regulate the price of said commodities, and for a long time prior to the date named were selling and disposing of the same at the prices stated; that on said date defendants wilfully and unlawfully entered into a pool, trust agreement and understanding, each with all the others, for the purpose of preventing competition in the sale of milk and cream, as well as to limit and fix the price thereof, and did then and there in pursuance of such conspiracy raise the price of milk and cream from the price theretofore demanded for the same. The indictment contains other allegations, but the foregoing is sufficient to an understanding of the question whether a public offense is stated therein.

The contention of defendants is that since the indictment charges that all the defendants on and prior to the date named therein were "jointly" engaged in the sale of milk and cream, they cannot be held to have violated the statute by raising the price of the articles so jointly sold. If the indictment be construed in harmony with defendants' claim, the contention made is sound. For if all these parties were jointly engaged in a common enterprise, and were not independent dealers, they were at perfect liberty to demand such prices for their products as they pleased, and for so doing, even though they raised the price, no charge of violating the statute could be made against them.

But we are of opinion and so hold that the indictment should not be construed as charging that defendants were jointly engaged in the particular business. It alleges that they were "jointly and severally" so engaged, and from this the conclusion naturally follows

that they were to some extent at least independent dealers, and for the purpose of regulating and limiting prices that they formed the conspiracy charged. Though indictments are construed strictly and no intendments indulged in support thereof, a reasonable interpretation of the language employed in stating the offense is always permissible, particularly in respect to matters of description or inducement. 2 Dunnell, Minn. Dig. § 29; 22 Cyc. 300; State v. Mayberry, 48 Me. 218. The allegations of the indictment relative to the nature of the business conducted by defendants, and that they were "jointly and severally" engaged therein, are matters of description or inducement, and properly construed as charging that they were to some extent independent dealers, and not all jointly associated together as one concern. So construing the allegations, the indictment is sufficient, and charges a violation of the statute.

2. The question whether a domestic corporation joining in the violation of the statute is subject to the penalty imposed by section 5168, a fine or imprisonment, is presented for the first time. Proceedings against corporations heretofore have been conducted under section 5169, for the forfeiture of their charters. State v. Duluth Board of Trade, 107 Minn. 506, 516, 121 N. W. 395, 23 L.R.A. (N.S.) 1260; State v. Creamery Package Mnfg. Co. 110 Minn. 415, 125 N. W. 126, 623, 136 Am. St. 514. In the case at bar the defendant corporation was proceeded against under section 5168, and the contention of the state is that corporations are subject to the double penalty of a fine of $500 to $5,000, under section 5168, and forfeiture of their corporate existence under section 5169, while the defendant milk company insists that it is not subject to criminal prosecution under section 5168, and that the only penalty that may be imposed upon it for a violation of the statute is a forfeiture of its charter. The question is one of legislative intention, to be gathered from the two sections of the statute construed together, and in connection perhaps with the prior statute of which those referred to are a revision.

It is not contended that a corporation is not indictable for a violation of penal laws, or that it is exempt from that sort of prosecution and punishment because it is not included in the word "per-

son" in statutes declaring that any person violating the law shall be punished, and it is conceded that, generally speaking, corporations are included within the scope of such statutes. But it is claimed that, by the revision of the particular statutes, the intention of the legislature to exclude corporations from the penalty prescribed by section 5168 is clear and manifest. In this we concur. By this we are not to be understood as holding that a corporation may not be indicted and convicted under the statute, and the conviction made the basis of proceedings under section 5169 for the forfeiture of its charter. In fact that would seem an orderly and proper procedure. But we do hold that the corporation may not be proceeded against under that section for the purpose, if found guilty of a violation thereof, of imposing the fine there prescribed. In our view of the matter sections 5168 and 5169 are perfectly clear and unambiguous, and there is no room for construction. If they were the original enactment, no doubt could arise as to the intention of the legislature in respect to the penalties imposed, and the conclusion would necessarily follow, from the language thereof, that separate penalties were intended.

The only doubt in the matter arises when reference is made to the prior statutes. The new statute is clear, it becomes ambiguous or doubtful only by referring to the original of which the new is a revision. In construing a revised statute a doubt or ambiguity in its meaning cannot be thus raised. Hamilton v. Rathbone, 175 U. S. 414, 20 Sup. Ct. 155, 44 L. ed. 219; State v. Stroschein, 99 Minn. 248, 109 N. W. 235. But, apply the rule that the old statute may be referred to, a consideration thereof in connection with the new only confirms the view stated, and leaves no fair doubt that the legislature by the last enactment intended to impose separate penalties upon persons and corporations. The original statute, chapter 359, p. 487, Laws 1899, covered the entire subject in detail. Section 1 thereof prohibited generally the formation of trusts and combinations by persons and corporations and declared them unlawful. Section 2 provided that "every person" who shall enter into any such prohibited trust or combination shall be punished by a fine of not less than $500, nor more than $5,000, or by imprisonment in

the state prison for not less than three nor more than five years. Section 3 provided that "any corporation," organized under the laws of the state, found guilty of a violation of the statutes should, "in addition to the penalty prescribed in section two of this act," forfeit its charter, rights and franchises. This as just stated imposed upon the domestic corporation double punishment for a violation of the statute. The same section imposed as punishment upon the foreign corporation banishment from the state only. Section 7 provides that the word "person" as used in the act should include corporations.

If these various provisions of the statute had been carried forward unchanged into the revision of 1905, there could be no question of the correctness of the position of the state, for it is clear that double punishment for the guilty corporation was therein intentionally provided for. They were not, however, carried forward in the form as originally enacted, but substantial changes were made which point to but one conclusion, namely, a purpose as already suggested to change the law. The original statute contained several sections and covered the subject of trusts and combinations in some detail. The whole of that act was reduced by the revision and included in two comprehensive sections, 5168 and 5169, which embrace every element of the prior statute. The first section provides that every person violating the statute shall be punished by fine or imprisonment. The next section provides that every domestic corporation violating the act shall, "in addition to the penalties imposed upon the members thereof" by section 5168, forfeit its charter, rights and franchises. The important change in the language of this section is found in this; the prior statute imposed upon domestic corporations as a penalty for a violation of the statute, forfeiture of their charters, "in addition to the penalty prescribed in section two of this act," which was fine or imprisonment. This was modified by the revision so as to impose a forfeiture of the charter, "in addition to the penalties imposed upon the members thereof." This change was significant and suggestive only of a purpose to relieve the corporation of double punishment.

The contention of the state that the words "members thereof,"

found in the clause last quoted, has reference to members of the unlawful combination is clearly not sound. The subject matter of the section is the punishment of domestic corporations, and the reference to "members thereof" refers and clearly was intended to refer to members of the corporation with respect to which the section deals. This harmonizes with the grammatical analysis of the language of the section; and it is elementary that in construing a statute the ordinary rules of grammar will be applied, except when a manifest injustice will follow, or a result reached which is obviously at variance with the legislative intent. This particular statute does not come within the exception. The language thereof is clear. And while a change in the language of a revised statute does not necessarily indicate an intention to alter the law, and the presumption is that no such purpose was intended, where a change as clear and significant as the one here involved in fact modifies the statute in point of substance, the presumption that no change was intended must yield to the fact. Farmers Co-operative Co. v. Enge, 122 Minn. 316, 142 N. W. 328. Corporations act only through their officers and members, and such officers and members for a violation of the statute are punishable as individuals under section 5168.

The former statute, in so far as it imposed double punishment upon the corporation, was undoubtedly deemed by the revision commission too severe, and the legislature evidently adopted that view in accepting and enacting the statute as revised. In other words, it was thought that the statute was a little drastic in providing for the punishment of the members of the corporation by fine, imposing the same punishment upon the corporation, and then as a climax, declaring that the corporation be put to death. Such was the situation before the revision, and we are satisfied that the intention was to change the law, on the theory that to impose a fine upon a corporation was more or less an idle ceremony, and that a forfeiture of its charter would more effectively prevent further violations of the law by the guilty corporation. Our view of the amended statute is sustained by Standard Oil Co. v. State, 117 Tenn. 618, 100 S. W. 705, 10 L.R.A.(N.S.) 1015, where a similar statute was construed as not to authorize both a fine and dissolution of the corporation.

3. A number of the assignments of error may be disposed of together and without extended discussion. The statute condemns and prohibits the formation of trusts and combinations in restraint of trade, or for the purpose of controlling the market, or raising the price of commodities of sale. The law was enacted to prevent the same and to punish those guilty of its violation. In a case like that at bar where the charge is the formation of a combination between several persons and corporations to increase the price of products sold and dealt in by each, it would seem unimportant that an increase of price was justified, either in view of the cost of production or other circumstances which might justify the individual to demand more for his goods. The statute was not designed as means for the regulation of the public market, nor as an attempt to control the price of goods offered for sale, but rather to check the tendency toward monopolization and to prohibit several dealers from combining together, the effect of which is the organized stifling of competition; and the aim of the statute was to remedy or prevent that evil. And in this case the first and important issue was whether a combination was formed by the defendant as charged in the indictment and for the purposes therein alleged. Evidence tending to show that defendants theretofore had been selling their milk and cream at a loss, or that other dealers more favorably situated occupied an advantageous position in the trade, or that defendants had valid and sufficient reasons for raising the price, would not constitute a defense or justify the wrongful combination. Malice is not an essential element in a prosecution for the violation of the statute. The sole inquiry is, was the combination formed for a purpose prohibited by the law, and whether the parties intended to violate the law is immaterial. 1 Dunnell, Minn. Dig. § 2409; State v. Quackenbush, 98 Minn. 515, 108 N. W. 953; State v. Sharp, 121 Minn. 381, 141 N. W. 526. And though defendants, acting independently, could have raised prices without subjecting themselves to a charge of violating the statute, their act in combining together to do so is prohibited, and evidence which only tended to justify or excuse the combination was properly rejected. This covers a number of alleged errors which we do not consider separately.

4. That defendants held a meeting at the time charged in the indictment, either for the purpose of forming a milk dealers association in Minneapolis, or for the purpose of forming the alleged unlawful combination, is clear from the evidence. In fact the meeting is not disputed by defendants. They claim, however, that it was for the sole purpose of organizing the association, and with no purpose to combine in an agreement to raise prices. While the state claims that the organization of the milk dealers association was a mere incident to the main purpose of the meeting, which was to form the unlawful combination charged in the indictment.

In some way the public authorities learned of the contemplated action of the milk dealers of the city, and detectives were employed to discover and bring to light the facts. The detectives were informed that the dealers were to hold a meeting at a certain place on the afternoon of September 29, 1912. Prior to the meeting the detectives gained entrance to the room in which it was to be held and installed therein a dictograph, properly connected by wires with a receiver placed in a closet adjoining the meeting room. The detectives concealed themselves in the closet and remained there during the meeting and subsequently reported the information gained by them. One of the detectives was a stenographer and made shorthand notes of things heard over the dictograph, while the other detective listened at the door leading from the closet to the meeting room. Both were produced as witnesses on the trial below; the stenographer testified to the contents of the notes made by him in the manner stated, from which the jury was justified in finding that the meeting was one called and held by the members thereof for the purpose of entering into an agreement to raise the price of milk and cream, and incidentally to form a milk dealers' association; the testimony of the witness was corroborated by the other detective who overheard what took place and what was said by the members of the gathering by listening at the door leading into the room. The stenographer's original notes were received in evidence, and several erasures and interlineations appear to have been made therein. These the witness fully explained, and the verity of his explanation was for the jury.

Defendants called R. A. Mabey, a court reporter of long experience, and attempted to show by him the incompetency of the detective as a stenographer, or the inaccuracy of his notes, and that they were unreliable. Much of his testimony upon the subject was received, and other portions excluded by the court on objection by the county attorney.

Complaint is made of these rulings. We have examined the record with care and find no sufficient reason for holding that any prejudice resulted to defendants, if it be conceded that some of the rulings were technically error. Why the county attorney persisted in interposing objections to the testimony of this and other witnesses produced by defendants is not made clear by the record. Many of them might well have been omitted. We fail to see, however, wherein defendants were substantially prejudiced. The whole testimony of witness Mabey related to the qualifications of the detective as a stenographic writer, the verity of his stenographic notes, and in point of substance was the opinion of the witness respecting the ability of the detective to make an accurate report of the proceedings; and also his opinion concerning the erasures and changes appearing upon the face of the notes. The credibility of a witness is ordinarily to be tested by cross-examination, and though it may be proper to do so in the manner here attempted, by the testimony of an expert, especially qualified in respect to the subject-matter, the extent to which the examination of the expert may be carried for this purpose, where he does not speak from personal knowledge, rests, as in the case of cross-examination for the same purpose, in the sound discretion of the court; no abuse of which appears. Witness Mabey did not profess any personal knowledge of the qualifications of the detective. People v. Holmes, 111 Mich. 364, 69 N. W. 501; Laros v. Com. 84 Pa. St. 200; Lawson, Expert Ev. 275, et seq.

5. The charge of the learned trial court was a comprehensive and complete statement to the jury of the issues in the case and the rules and principles of law applicable thereto. We discover therein no error of which defendant can complain. It is well-settled law in this state that the trial judge in criminal cases may review the evi-

dence in his instructions to the jury, and may state to them that it tends to prove certain facts; State v. Rose, 47 Minn. 47, 49 N. W. 404.

The only restriction upon the right is that the review shall be fair and impartial, and not in a manner naturally to confuse the jury, or to lead them to a particular result. State v. Yates, 99 Minn. 461, 109 N. W. 1070; 1 Dunnell, Minn. Dig. § 2479. If the charge in the case at bar may, by close analysis, be said to be inaccurate in any substantial respect, we are clear that such inaccuracy was not of a nature to mislead the jury. They were expressly informed that the increase in the price of milk, though made by all the defendants on the same day, was not a violation of the statute, and that no conviction could be had unless it appeared that the defendants jointly entered into an agreement for that purpose. And further that, if such agreement was entered into, the statute was violated. The rules of law applicable to the issues were clearly stated, and the requests presented by defendant were all sufficiently covered by the general charge. We find no error of a nature to require reversal.

6. The question whether the county attorney was guilty of misconduct in delivering an interview to the newspapers at the close of the trial, of an inflammatory nature, was peculiarly one for the trial court to determine. While the county attorney practically conceded the fact that he made certain statements to newspaper reporters, and that such statements were published and probably reached the jurors, who were not in charge of an officer pending the trial, yet it was for the trial court to determine the effect thereof upon the jurors, and whether prejudice therefrom resulted. The act of the prosecuting attorney in this respect, even though his remarks were not intended for publication, and he so informed the reporters, is not to be commended.

This covers all that need be said. We have considered all the assignments of error not specially treated by the opinion, with the result that no error as to defendant Ruhnke appears; the evidence sustains the verdict, and the order denying his motion for a new trial is affirmed. And since defendant milk company is not subject to the penalty prescribed by section 5168, the court erred in im-

posing it, and the order denying its motion for a new trial is reversed.

HALLAM, J. (dissenting).

I cannot concur in the portion of the foregoing opinion which holds that under sections 5168, 5169, R. L. 1905, domestic corporations offending against the provisions of 5168 are not liable to the general penal provisions of that section, but that such corporations are liable only to punishment by forfeiture of charter.

It appears to me that the general penal provisions of section 5168, R. L. 1905, apply to corporations to the same extent as to individuals.

Section 5168 makes it an offense to "enter into any pool, trust agreement, combination, or understanding" in restraint of trade, or to limit, fix, control, maintain or regulate the price of any article of trade, manufacture or use or to limit the production thereof, or to prevent or limit competition in the purchase or sale thereof, and it contains the general penal clause that every person violating any provision of that section shall be punished by fine or imprisonment.

If this section stood alone, it would concededly be broad enough to cover corporations, for the word "person" includes corporations. R. L. 1905, § 4748, subd. 11. The trouble arises from the language of section 5169. This section provides that every domestic corporation violating any provision of section 5168, "or which shall in any way assist in carrying out any of the purposes of such illegal pool, trust agreement, combination, or understanding, in addition to the penalties imposed upon the members thereof by said section, shall forfeit all its corporate franchises."

It is contended that the term "members thereof" as here used, means members of the corporation and that the use of the language quoted, taken in connection with all of the provisions of these sections, indicates an intention to impose punishment by section 5168 only upon natural persons, and by section 5169 to impose upon domestic corporations only the additional punishment of forfeiture of charter, to the exclusion of the punishment imposed by the general penal provisions of section 5168.

I cannot concur in this construction. It appears to me that sec-

tion 5168 was intended, as its language imports, to impose the punishment therein prescribed upon all participants in the prohibited combinations, including corporations so participating; that the term "members," used in section 5169, means members of the combination, not members of the corporation, and that the provision of section 5169 imposing the penalty of forfeiture upon domestic corporations participating in any illegal combination, "in addition to the penalties imposed upon the members thereof" by section 5168, means that such punishment is in addition to the penalties imposed upon all members of the combination by that section. This use of the term "members" is consistent with the language of both sections. The preceding section does impose penalties upon the members of the combination. It does not impose penalties upon the members of the corporation as such. It does not impose a penalty upon members of the corporation at all, unless they may be active participants in the combination, and then only as such participants.

If it is not clear that this is the correct view, then it must at least be said that the language is ambiguous, and in such case resort may be had, in interpreting its meaning, to the history of this legislation and to the terms of the statute in force prior to the revision. It is conceded that under the statute in force prior to the revision, the general penal provisions now embodied in section 5168 did apply to corporations as well as to individuals and that the penalty of forfeiture of charter imposed upon domestic corporations was in addition thereto. Changes in language made by a revision of statutes are not to be regarded as altering the law, unless it is clear that such was the intention. Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; Odegard v. Lemire, 107 Minn. 315, 119 N. W. 1057.

That the construction of the word "members," above indicated, is the correct one, is, it seems to me, made clear by reference to the language of the various statutes which were incorporated in the revision.

The first of these statutes was chapter 10, p. 82, Laws 1891. This act made it an offense to "create, enter into, become a member of or a party to" any pool, trust, agreement, combination or confederation to regulate or fix prices of or control the output of certain commodi-

ties.   This language was carried forward into G. S. 1894, §§ 6955, 6956.

Chapter 359, p. 487, Laws 1899, without repealing the act of 1891, covered the same ground, and more.   Instead, however, of using the terms "create, enter into, become a member of or a party to" any such pool, it used only the words, "enter into" such combination.

Chapter 194, p. 269, Laws 1901, prohibits pools, trusts or combinations, and prohibits the boycott of any other person or corporation because "not a member of or party to" any such combination.

All of these acts were before the revisers when they compiled the Revised Laws of 1905, and it appears to me that in drafting section 5169, when they used the term "members" in the provision that domestic corporations engaging in any illegal pool, trust or combination, should be subject to forfeiture of charter in "addition to the penalties imposed upon the members thereof," they used it as it was used in the act of 1891, the General Statutes of 1894, and the act of 1901, and that the legislature had the same intent when it adopted their revision.   If such is the case, then the prior statute was not changed by the Revised Laws of 1905, and corporations are now, as before, subject to the same penalties as individuals.

It should also be noted that the revisers in their report upon the whole criminal code say, "only one material change has been proposed, and that not a change of law, but of definition," introducing the term "gross misdemeanor," as defining a certain class of offenses. Revisers' Report, page 37.   This, while not conclusive, is entitled to some force.

The following modification of the order was filed on December 15, 1913:

PER CURIAM.

Our attention has been called by the Attorney General to the fact that the order remanding the cause is perhaps indefinite and should be corrected.   In view of the conclusion that the corporation might be proceeded against by indictment and conviction and the judgment

rendered thereon made the basis for dissolution proceedings, the order remanding the cause should have been with directions to the court below to modify its judgment by eliminating the fine, leaving the judgment stand as one of conviction of the crime charged. The former order is therefore modified accordingly, and the reversal of the order denying the motion of the corporation for a new trial is withdrawn.