## J. T. MILLER v. MINNEAPOLIS UNDERWRITERS ASSOCIATION, INC. AND OTHERS.[1]

June 11, 1948.

No. 34,606.

---

[1]Reported in 33 N. W. (2d) 48.

368

*Willard C. Lindsay* and *Russell Smith,* for appellant.

*Walter H. Bennett, Stanley V. Shanedling,* and *Mark J. Woolley,* for respondents.

MATSON, JUSTICE.

Action to adjudge a forfeiture of the corporate franchise of the Minneapolis Underwriters Association, Inc. (hereinafter called the association) and to enjoin its officers from enforcing certain bylaws of the association on the ground that such bylaws and certain practices thereunder violate M. S. A. 623.01 by so unreasonably restricting and restraining competition in the insurance business as to constitute a conspiracy and boycott in restraint of trade. The appeal by plaintiff, a nonmember of the association, from a judgment for defendants presents the question whether the trial court's findings, conclusions, and judgment are sustained by the evidence.

The association, organized in 1883 and incorporated in 1923, is a voluntary, nonstock, nonprofit membership corporation composed of fire insurance agents in the city of Minneapolis. Its membership is not open to insurance companies but is limited to their agents. Out of a total of 254 companies writing insurance in Minneapolis, 173

are stock companies and 81 are mutuals. The agents (inclusive of approximately 150 firm agencies) of 159 stock companies are members of the association and write from 70 to 80 percent of the premium volume of all fire insurance written in Minneapolis. The balance of the insurance is written by nonmember agents, who represent 81 mutual and 14 stock companies. The number of agent members is not indicative of the number of licensed agents represented in the association, because any agent member may have in his employ, or affiliated with him, other individual sales agents who are registered as solicitor members. Plaintiff, who is not a member of the association, is the general agent for several insurance companies and as such employs numerous subagents.

We are particularly concerned with three provisions of the bylaws of the association, namely, (1) the "Maintenance of Rates Rule," whereby all members are required to write insurance at the rates promulgated by a statutory bureau known as the Minneapolis Fire Underwriters Inspection Bureau; (2) the "In-or-Out Rule," whereby members are prohibited from representing any company whose agents are not all members of the association; and (3) the "Non-Intercourse Rule," whereby members agree not to place insurance on Minneapolis property with any agent or company except in compliance with the bylaws, and further agree not to accept brokerage risks except from fellow members. For a first violation of the bylaws a member is subject to a fine, and for a second violation, to both fine and expulsion from membership.

The Minneapolis Fire Underwriters Inspection Bureau (hereinafter called the bureau), referred to in the "Maintenance of Rates Rule," is a rate-making bureau legally established pursuant to the Minnesota fire insurance rating bureau law (M. S. A. 71.01 to 71.06), and any rates established by such bureau, in order to prevent discriminatory and unjust rates, *are at all times subject to review and revision by the state insurance commissioner.* In establishing rates, the bureau, under a credit and debit system, classifies the risks according to the presence or absence of fire protection and fire prevention facilities. The basic premium rate may be increased by charging

against a particular risk certain debits for a deficiency of minimum fire protection safeguards. On the other hand, another risk may receive a reduction in the basic rate by virtue of credits allowed for the presence of fire protection facilities. Among the insurance agencies, inclusive of the members of the association, there is considerable competition in securing for their respective customers all credits to which they are justly entitled, as well as in avoiding unjustifiable debits.

The rating bureau statute expressly provides that any insurer may deviate from the bureau rate, but if the deviation is downward then such insurer must maintain the lower rate for a minimum period of one year with respect to the class of property involved. An insurance agent is not compelled to join the association, but if he elects to do so he thereby subjects himself to the bylaws, which are designed to compel all members to charge the rates fixed by the bureau, and not to deviate therefrom without first obtaining permission from the association. In order to meet competition from a deviating nonmember, the association may, in so-called "relief cases," give a member express permission to broker a specified line of insurance at a variation rate with a nonmember agent who represents a deviating company. With the exception of such relief cases in which permission to deviate has been granted, it is the practice of the association to require the members not only to charge the bureau rate, but also not to place, or to renew, any insurance with a nonmember. Aside from the relief case exceptions, it appears that on certain occasions members have refused to become agents for companies represented by plaintiff, a nonmember, and that by reason of the bylaws members have refused to place or continue insurance with plaintiff's (as well as with other) companies. It has been the regular practice of the association to remind individual members of their obligations whenever a threatened violation of the bylaws has come to light.

1. Plaintiff is not entitled to injunctive relief. The entire case has been tried on the theory established by plaintiff's pleadings, which simply allege that defendants by certain acts of conspiracy

and boycott have brought about a restraint of trade for the purpose of stifling competition in the insurance business and in order to maintain maximum insurance premium rates in violation of §§ 623.01 and 623.02. The basic antitrust section, namely, § 623.01, is a criminal statute, and has been so recognized. Campbell v. Motion Picture M. O. Union, 151 Minn. 220, 186 N. W. 781, 27 A. L. R. 631. Here, we have nothing more than a purported violation of a criminal statute. We have no allegation or showing that plaintiff's property or plaintiff's rights of a pecuniary nature have been actually injured or threatened. An inference might be drawn that certain practices of the association have been detrimental to plaintiff, but such an inference cannot supply the positive proof of the actual or threatened injury required for a granting of injunctive relief. It is not the province of a court of review to draw inferences as to the showing that could have been made, but which in fact was not made, upon the trial below. Equity will not enjoin purely criminal acts, but on the other hand the criminality of an act will not bar injunctive relief if there is otherwise ground for it. Higgins v. Lacroix, 119 Minn. 145, 137 N. W. 417, 41 L.R.A.(N.S.) 737. Although equity will not enjoin a criminal act, it does have jurisdiction to enjoin an act which actually injures or threatens to injure property or rights of a pecuniary nature, and such jurisdiction is not destroyed by the fact that the act is accompanied by, or is itself, a violation of the criminal law. Glover v. Malloska, 238 Mich. 216, 213 N. W. 107, 52 A. L. R. 77. The criminality of the act neither gives nor ousts jurisdiction in chancery.[2] An injunction will be granted against a criminal act on the ground of actual or threatened injury to the property rights of an individual only if the complainant clearly

---

[2]State v. Sportsmen's Country Club, 214 Minn. 151, 7 N. W. (2d) 495; State v. Preuss, 217 Minn. 100, 13 N. W. (2d) 774; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356; Town of Linden v. Fischer, 154 Minn. 354, 191 N. W. 901; Campbell v. Motion Picture M. O. Union, 151 Minn. 220, 186 N. W. 781; State v. Vaughan, 81 Ark. 117, 98 S. W. 685, 7 L.R.A.(N.S.) 899, 118 A. S. R. 29, 11 Ann. Cas. 277; Annotations, 52 A. L. R. 79, 40 A. L. R. 1154, 91 A. L. R. 320, 94 A. L. R. 363; 28 Am. Jur., Injunctions, §§ 148, 150, 155; 3 Dunnell, Dig. & Supp. § 4483a.

shows facts and circumstances justifying the relief desired. 28 Am. Jur., Injunctions, § 150.

Obviously, § 613.70 is not involved on this appeal. The general rule, with certain exceptions not here applicable, is that litigants are bound in this court by the theory upon which the action was tried below. Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44.

2. The remaining issue relates to plaintiff's attempt to vacate or annul the association's corporate charter pursuant to § 623.02, which provides that every domestic corporation violating, directly or indirectly, any provision of § 623.01 "shall forfeit all of its corporate franchises." Section 623.02 further provides:

"* * * The attorney general and the several county attorneys shall begin and conduct, in the district court, *all actions and proceedings* necessary to enforce the provisions of this section, *and any citizen may do so.*" (Italics supplied.)

Defendants contend, however, that both sections of the statute, as part of the same criminal chapter, involve criminal proceedings, and that plaintiff as a private citizen cannot begin or conduct a criminal prosecution. Whether a private citizen may be authorized to conduct a criminal action need not be determined. It is sufficient to point out that defendants are in error as to the nature of the proceedings for declaring a forfeiture of a corporate charter under § 623.02. The preceding section, § 623.01, is a criminal statute, and we have so held. State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244; State v. Creamery Package Mfg. Co. 115 Minn. 207, 132 N. W. 268, L. R. A. 1915A, 892, Ann. Cas. 1912D, 820. The fact that the succeeding section, § 623.02, is part of the same criminal chapter is not controlling as to the nature of the proceedings thereby authorized. It is true that the forfeiture of a corporate charter thereunder is a consequence of violating a criminal statute, but it is not a penal consequence. See, State v. Harris, 50 Minn. 128, 134, 52 N. W. 387, 388; State ex rel. Connolly v. Parks, 199 Minn. 622, 625, 273 N. W. 233, 235. An action to adjudge a vacation or annulment of a corporate charter is a civil remedy employed

by or in behalf of the state to cancel or recall a franchise privilege which the domestic corporation proceeded against has abused. In this respect the statute is merely declaratory of the common law. The action is no more criminal than is an action for damages resulting from the commission of a crime. State v. Standard Oil Co. 61 Neb. 28, 84 N. W. 413, 87 A. S. R. 449; State v. Central Lbr. Co. 24 S. D. 136, 123 N. W. 504, 42 L.R.A.(N.S.) 804; Ames v. Kansas ex rel. Johnston, 111 U. S. 449, 4 S. Ct. 437, 28 L. ed. 482; 36 Am. Jur., Monopolies, Combinations, etc., § 218; see, 12 Minn. L. Rev. 422 and 41 Harv. L. Rev. 244; High, Extraordinary Legal Remedies, § 597. In holding that actions for the termination of a corporate charter have not been recognized as criminal proceedings since the early days of the common law, the supreme court of Missouri in State ex inf. Hadley v. Delmar Jockey Club, 200 Mo. 34, 71, 92 S. W. 185, at 98 S. W. 539, 543, said:

"* * * The violation of a corporation's contract with the State by misuser or usurpation may be evidenced by the fact of the violation of some statute, criminal in character, but in this kind of proceeding we try the right of the corporation to further hold its franchises, not the question of finding its guilt or innocence under the statute and fixing punishment permitted by the statute. It is the only way the State has of preventing the abuse of the confidences it has reposed in these corporate creatures which are of its own making."

3. It is undoubtedly true that if a domestic corporation is indicted and convicted for a violation of § 623.01 such criminal conviction may be made the basis for charter forfeiture proceedings under § 623.02. See, State v. Minneapolis Milk Co. 124 Minn. 34, 144 N. W. 417, 51 L.R.A.(N.S.) 244. An action for cancellation of a corporate charter is, however, so distinctly a civil proceeding that, in absence of a statutory requirement to the contrary, a criminal conviction for the violation of the antitrust statute is neither a condition precedent to the commencement of the action nor to a judgment of forfeiture. In establishing a basis for charter forfeiture,

a violation of the antitrust statute, § 623.01, may be determined independently of any criminal prosecution or conviction. State ex inf. McAllister v. Blattner Bros. (Mo.) 226 S. W. 253; State ex rel. Hadley v. Standard Oil Co. 218 Mo. 1, 116 S. W. 902 (affirmed, 224 U. S. 270, 32 S. Ct. 406, 56 L. ed. 760, Ann. Cas. 1913D, 936) ; 41 C. J., Monopolies, § 262; Ferris, Extraordinary Legal Remedies, § 142. The primary purpose of the proceeding is to establish an abuse of the corporate franchise privilege, irrespective of whether a crime has been committed, as a basis for adjudging that such abuse constitutes a forfeiture of the charter. See, State ex rel. Hahn v. Minnesota Cent. Ry. Co. 36 Minn. 246, 258, 30 N. W. 816, 817.

4. Clearly, plaintiff was and is qualified to begin and conduct charter forfeiture proceedings. Has he, however, pursued the right remedy? Section 623.02 gives him the right to begin proceedings, but does not designate the form of action. Obviously, the right to begin the necessary proceedings does not dispense with the need for selecting the proper remedy. In Dennistoun v. Davis, 179 Minn. 373, 229 N. W. 353, this court pointed out that, although the attorney general in seeking to vacate a corporate charter may proceed either by civil action under § 556.07 or by quo warranto, any other person, in the absence of express statutory authorization, must rely exclusively on quo warranto as a remedy. See, Ray v. Homewood Hospital, Inc. 223 Minn. 440, 443, 27 N. W. (2d) 409, 411. The civil actions authorized by §§ 556.07 and 301.57 are available only to the attorney general, and it should be noted that, in absence of these two sections, aside from any revocation of a corporate charter as part of a direct criminal proceeding, the attorney general himself would be limited to a writ of quo warranto. In failing to use the only remedy available to a private relator, plaintiff's action must fail. See, 2 Dunnell, Dig. & Supp. § 2130; 5 *Id.*, §§ 8060, 8065, and 8074.

The judgment of the trial court is affirmed.

Affirmed.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

[1]Reported in 33 N. W. (2d) 484.