In the Matter of New York County Lawyers Association, Appellant. Bernard Bercu, Respondent.

First Department, April 12, 1948.

*Edwin M. Otterbourg* of counsel (*Mortimer S. Gordon, Abraham N. Davis* and *Frederic P. Houston* with him on the brief; *George R. Adams,* attorney), for appellant.

*Mathias F. Correa* of counsel (*Loftus E. Becker* and *John H. Clark III* with him on the brief; *Cahill, Gordon, Zachry & Reindel,* attorneys), for respondent.

*Gray Williams* of counsel for The Association of the Bar of the City of New York.

*Julius Henry Cohen* of counsel (*Robert E. Lee* and *Mason H. Bigelow* as Presidents of the New York State Bar Association; *Weston Vernon, Jr.,* and *Rush Taggart* with them on the brief), for New York State Bar Association as amicus curiæ.

PECK, P. J. The New York County Lawyers Association brought this proceeding to punish respondent for contempt and to enjoin him from pursuing certain activities which petitioner claims constitute the practice of law. The substantive question is whether the professional practice in which respondent is admittedly engaged constitutes the practice of law. A preliminary procedural question is whether the substantive question may be entertained and determined by the court in this summary proceeding.

Petitioner contends that respondent, an accountant, has engaged in the unlawful practice of law in giving tax advice to clients, and that as the facts are not disputed respondent may summarily be punished for contempt of court and enjoined.* Respondent contends that the advice given was in the nature of an accounting service, rather than a legal service, and that in any event his activity outside of court may not be regarded or treated as a contempt of court and may not be made the subject matter of an injunction except through an action brought under article 75-A of the Civil Practice Act, which would require petitioner to make written request of the Attorney-General to bring the action. Such request was not made. Respondent therefore contends the proceeding may not be maintained.

The learned Justice at Special Term concluded that so far as injunctive relief was concerned petitioner was under disability to proceed because it had failed to observe the requirement of article 75-A of giving notice to the Attorney-General, but that the proceeding might be maintained as one to punish for criminal contempt under section 750, subdivision 7, of the Judiciary Law. On the substantive question, the court held that respondent's activity lay within the proper scope of the accounting profession and, therefore, did not constitute the unlawful practice of law.

We will deal with the procedural point first. To practice law *in any manner,* unless one be duly and regularly licensed and admitted to practice law, is a violation of section 270 of the Penal Law, and it has been determined that giving legal advice outside of court is a violation of that statute (*People* v. *Alfani,* 227 N. Y. 334). Three procedural routes are available for enforcing the statute. One is by criminal prosecution, another is by action for an injunction under article 75-A of the Civil Practice Act, and a third is by summary proceeding under section 90, subdivision 2, and section 750, subdivision 7, of the Judiciary Law. Said sections of the Judiciary Law were enacted together in 1937 (see L. 1937, ch. 311), the one giving the Supreme Court power and control over all persons practicing or assuming to practice law, and the other giving the Supreme Court power to punish for criminal contempt any person who unlawfully practices or assumes to practice law,

---

* This proceeding arose out of an action brought in the Municipal Court by respondent against the Croft Company for professional services. Judgment was rendered in favor of the company on the ground that respondent's services were legal services. All the facts stated in this opinion are taken from respondent's testimony in the Municipal Court action. There is thus no dispute as to the facts.

and providing that a proceeding under that section may be instituted by any bar association incorporated under the laws of this State. As it has also been determined that a contempt proceeding may be employed to punish an unlawful practice of law outside of court (*Matter of New York County Lawyers Association* [*Cool*], 268 App. Div. 901, affd. 294 N. Y. 853) Special Term properly held in this case that the proceeding was properly instituted by petitioner and that respondent was not entitled to a dismissal.

As to the injunction aspect of the proceeding, we think that the case may not be regarded as an action for an injunction because we agree with Special Term that such an action would be subject to the limitation of article 75-A of the Civil Practice Act, requiring a request of the Attorney-General to bring the action before it might be instituted by a bar association. We believe, however, that an injunction to the extent appropriate may be issued as part of the remedy in a summary proceeding (*Matter of New York County Lawyers Association* [*Dawkins*], 262 App. Div. 56, affd. 289 N. Y. 553). We find nothing inconsistent with article 75-A in the use of an injunction as an instrument of enforcement in such a proceeding. Article 75-A provides a method for trying out a question of alleged unlawful practice of law, the object of which is to obtain an injunction, where disputed issues of fact require a trial. The article, for example, provides for an examination before trial in such an action. It would seem that the limitation of the article is not upon the issuance of an injunction as a remedy but rather upon the institution of the kind of an action which the article contemplates. Where an action is not necessary, as where the facts are undisputed, a summary proceeding may be simpler, more expeditious and more appropriate than either a criminal prosecution or civil action. Where such a proceeding is available and appropriate, we do not regard the limitation in article 75-A as a limitation upon the court in determining the remedy to be employed in enforcing its mandate. It is of some significance that sections 90, subdivision 2, and 750, subdivision 7, of the Judiciary Law were enacted after article 75-A of the Civil Practice Act. If the court may punish a contempt by fine or imprisonment, it certainly should be able to employ the lesser and more salutary remedy of injunction.

We come, therefore, to the substantive question. Respondent is an accountant. He gave certain advice to the Croft Company on a tax question. He was not the auditor for the company, nor did he do any work of any kind on the books of the company. He did not prepare the tax return. The question on which he

gave advice arose as follows: The City of New York had claims against the Croft Company for retail sales taxes and compensating use taxes attributable to business done in the years 1935 1936 and 1937. The claims had not been paid in those years, in which the company had no taxable profits. In 1943, the company made large profits which would require it to pay a minimum of 80% Federal tax on its net profits. It seemed advantageous to the company, therefore, to settle the city tax claims for the prior years in the year 1943, if a deduction for the payment could be taken on the Federal income tax return for 1943. The company was thus considering compromising the city's claims if it was legal for the company to deduct the payment as an expense in 1943, rather than attribute the expense to the years in which the claims accrued.

The Croft Company kept its books on an accrual basis. The company's regular accountant, who was also a lawyer, had given his opinion, based on a decision of the United States Supreme Court, that any such payment would have to be charged back to the years in which the tax obligations were incurred. The president of the company consulted respondent, wanting to know why payment was not properly deductible in the year in which made. Respondent testified: '' As an accountant, I said, ' No,' and he said he could not understand as a business man why it was not deductible, and he wanted my advice based on what I know of the tax law.''

Respondent had several conferences with the president of the company and/or the company's accountant-lawyer. He first stated that he was confident that there was a case similar to the Croft case and in its favor, and that he would make his own research on the subject. Thereafter he made a study of the reported decisions on the subject, examining a score or more of the hundreds of cases on the question, and found a Treasury decision which in his view supported the position the Croft Company wished to take. Respondent then addressed the following letter to the Croft Company:

'' August 21, 1943

'' Mr. JOSEPH C. BANCROFT
Croft Steel Products, Inc.
370 Lexington Avenue
New York, N. Y.
Dear Sir:

You will recall our conference of Friday last, when we discussed the question as to the year in which a New York City sales

tax, assessed upon your company and payable in 1943, is properly deductible by your company on its Federal tax returns.

At that conference, Mr. Jacques Levy contended that under the general rule laid down by the U. S. Supreme Court, a sales tax which accrued in prior years is properly deductible only in those years, since the books of your company have been kept on an accrual basis. You will recall my contention that despite this general rule, your case could be shown to be an exception, in that there was no definite ruling as to the taxability of your products in those years, and you did not bill any sales tax to your customers in those years.

At your request, I have examined the available sources of information on this question, and find that, in 1941, the Internal Revenue Department had ruled on precisely this question, in favor of the business man's viewpoint, that a disputed tax liability is properly due and accruable in the year in which the dispute is settled.

This decision (I. T. 3441) (C. B. 1941 — 1 p. 208) cites facts which are apparently exactly comparable to your situation and which may be summarized as follows:

The M. Company had not added sales tax on material installed under lump-sum contracts in the years 1935, 1936 and 1937. It considered these installations as being affixed to realty, and the sales not subject to tax because made for the improvement of real property. The tax authorities ruled otherwise, and in 1939 the company was assessed. Also, a small portion of the additional assessment covered taxes on sales of material shipped from without the state into New York City, which the company considered interstate commerce, and not subject to the tax. The tax authorities also ruled such sales taxable, and the ruling was upheld by the U. S. Supreme Court.

It is held that taxes assessed in 1939, paid out of the company's own funds which the company should have collected from its vendees in earlier years are deductible not as a tax, but as a business expense under Section 23(a) of the Internal Revenue Code.

In view of this specific favorable ruling, I have gone no further in marshalling precedents to sustain your position.

I shall be pleased to discuss this matter with you at your convenience, and help you to conclude the City case in a manner which will be squarely within the scope of the Federal Revenue Department ruling.

Very truly yours,

BB:rl

cc to:

Mr. Jacques M. Levy "

For his services respondent submitted a bill for $500, describing the services as follows: "Consultations in re deductibility in current taxable year of N. Y. City excise taxes for prior years" and "Memorandum in re above".

The charge was at the rate of about $50 an hour for his time. Respondent admitted that this work was not an isolated instance of its kind and that he often gave advice of the character which he gave to the Croft Company, without examining books or preparing tax returns. For auditing he charged $15 an hour, but for services as a tax consultant he received as high as $50 an hour.

As the tax problem confronting the Croft Company was a dual problem involving both a sales tax and compensating use tax, which could not be assimilated in legal treatment, there is force in petitioner's argument that respondent oversimplified the problem and inadequately covered it in his research and advice, which were confined to considering a sales tax problem. Petitioner's point is that respondent was dealing with complex questions of law, on which the numerous decisions were far from clear, and the questions were not susceptible to the cavalier answer which respondent gave. Thus, petitioner contends, respondent was entering into a field of law and fine legal distinctions far removed from the practice of accountancy. Respondent contends, on the other hand, that he was dealing with a subject which was primarily a matter of accounting and though touching upon the law was within the field of accounting practice, and that the advice he gave met and correctly answered the question put to him.

We shall not dwell on the adequacy or accuracy of the advice given, or discuss the applicable law, for the decision in a case of this kind should not turn on the quality of the advice given. The decision must rest on the nature of the services rendered and on whether they were inherently legal or accounting services.

Petitioner acknowledges that tax law enters into accounting and accounting into tax law and that it is a proper function of an accountant to prepare tax returns, which work requires a knowledge and application of the law, but contends that giving advice with respect to the tax law, unconnected with work on the books or tax returns, is giving legal advice and practicing law. As much is implicit in respondent's testimony.

"Q. Answer me: did you say you knew what the legal point was involved in this question? A. I knew the point.

"Q. Did you say 'Legal' point, just then? A. I did, and I withdraw it just now.

" Q. Why? A. Because it is not a question of legal point but it is a question of applicability of the tax law as understood by accountants.

" Q. Isn't that a legal point, applicability of the tax law? A. Well, accountants have to determine questions.

" Q. You mean accountants practice law? A. No, accountants have to understand the tax law in order to be able to keep books and prepare tax returns."

Respondent then went on to say that he did no work on the books or tax return of the Croft Company.

The case is not an easy one because of the overlapping of law and accounting. An áccountant must be familiar to a considerable extent with tax law and must employ his knowledge of the law in his accounting practice. By the same token, a tax lawyer must have an understanding of accounting. It is difficult, therefore, to draw a precise line in the tax area between the field of the accountant and the field of the lawyer. Unless we are to say, however, that because common ground exists between the lawyer and accountant in the tax area no bounds may be recognized between them, some line of demarcation must be observed. We believe that the line has not been altogether obliterated, and with due regard to the latitude which should be given to the accountant, a majority of this court is quite clear in its mind that respondent's services in this matter were well into the field of the law and outside of the field of accounting. To hold otherwise would be tantamount to saying that an accountant may practice tax law.

The accountant serves in setting up or auditing books, or advising with respect to the keeping of books and records, the making of entries therein and the handling of transactions for tax purposes and the preparation of tax returns. Naturally his work and advice must take cognizance of the law and conform with the law, particularly the tax law. The application of legal knowledge in such work, however, is only incidental to the accounting functions. It is not expected or permitted of the accountant, despite his knowledge or use of the law, to give legal advice which is unconnected with accounting work. That is exactly what this respondent did. He was doing no accounting work for the Croft Company within the ordinary or proper conception of an accountant's work. He had nothing to do with the Croft Company's books. or its tax return. He was not giving any advice as to how the books should be kept or how entries should be made or transactions or figures recorded. There was no question of the book or record handling of the

facts and figures involved in the city's tax claims. The facts were all fixed and the only question was what view the tax authorities and ultimately the courts would take as to the years in which the payment of the city's tax claims would be deductible for Federal tax purposes. In short, legal advice was sought and given on a question of law.

That question was put to respondent not even in connection with the preparation of a tax return but for the purpose of determining whether the city's tax claims should be compromised. What the Croft Company proposed to do in reference to the disposition of those claims depended upon the advice it received as to the law applicable to the proposed settlement if made. The question respondent undertook to answer was in nature a question of law, as is made all the more evident when one considers the research respondent undertook in the matter and the legal labyrinth into which any thorough research in the matter would lead.

We are told in behalf of respondent that the basis of the tax law is accounting and that the tax subject upon which respondent gave his advice is a matter of proper accounting practice. We are also told that the administration of the tax law in the Treasury Department and other agencies of government is mainly in the hands of accountants, and that taxation is a particular specialty of accountants in which they are more expert than lawyers.

Fortunately the tax law conforms largely with accepted principles of accounting, as most law conforms with business customs and practices. One need only thumb through the Internal Revenue Code relating to income taxes, however, or listen to the criticism leveled at the tax laws and decisions by some writers on accountancy, to note the many respects in which tax law is at variance with usual accounting principles. And it is certainly contrary to fact to view the advice which respondent gave in this case as following accounting principles. The Croft Company kept its books on an accrual basis and as an accounting matter would be expected to charge the city's tax claims against the years in which they accrued. Undoubtedly that is why the company's accountant advised that the income tax deductions for those claims would have to be taken in the years in which they accrued and could not be taken in 1943. Undoubtedly, also, that is why respondent, " as an accountant ", said " No " to the question of the Croft Company's president as to whether the deduction could be taken in 1943. He under-

took, nevertheless, and in his opinion successfully, to find a different answer in the '' tax law ''.

An accountant may know more about the tax law than some law practitioners, just as a labor relations adviser, trust officer or customs broker may know more about the law relating to their businesses than many lawyers not specialists in the law relating to such business. A layman may know a lot of law about a particular subject, upon the knowledge of which he may rely at his own risk in his own business. He may not, however, set himself up as a public consultant on the law of his specialty. If the services of a specialist in some particular branch of the law are required, the public must still turn to the bar, for all the reasons of public protection for which the bar and bar standards are maintained. The law specialist offers more and much more is required of him for admission to practice than knowledge of his specialty. He must have a grounding in the law and a legal education and training, must pass examinations in the law and attain and maintain standards which are imposed by the Bench and Bar for the protection of the public.

The law includes many specialties, perhaps as diverse as specialties in medicine, but they are all related and integrated in the common body of the law, much the same as specialties in medicine are linked in the whole body of medicine. One might become informed, and even expert, in some narrow specialty of medicine without the general training, preparation and experience required for admission to practice medicine. Yet we know that only the generally trained doctor, grounded in medicine as a whole, has the understanding requisite to practice medicine in any of its branches, albeit the laboratories, so intimately and vitally connected with medical service, are staffed by technicians who are not medical doctors.

Similarly, the law specialist should be trained and grounded in the law. A thorough knowledge and understanding of basic legal concepts, legal processes and the interrelation of the law in its parts are quite essential to the practice of law in any of its branches. Technicians are needed to serve in bureaus and agencies and in numerous nonlegal capacities, but the counsellor licensed and trusted to advise the public with respect to the law must be a duly qualified and admitted lawyer. We are unable, therefore, to regard the admission of accountants, subject to certain qualifications and regulations of the Treasury Department and the Tax Court, to practice before those agencies, as an authorization to accountants to practice tax law at large

or as an eradication of the distinction between the lawyer's and the accountant's function in the tax field.

It is much too narrow a view, and one revealing inadequate perception, to regard the tax law as mainly a matter of accounting. More than most specialties in the law, tax law is drawn from and involved with many branches of law. It bridges and is intimately connected, for example, with corporation law, partnership law, property law, the law of sales, trusts and frequently constitutional law. Quite obviously, one trained only in accounting, regardless of specific tax knowledge, does not have the orientation even in tax law to qualify as a tax lawyer. Equally obviously, as a matter of administration, he may not practice any phase of tax law, regardless of what might be his subjective qualifications for the particular undertaking. Inquiry cannot be made in each case as to whether the particular accountant or accountants generally are sufficiently familiar with the law on a particular tax question to be qualified to answer it. An objective line must be drawn, and the point at which it must be drawn, at very least, is where the accountant or nonlawyer undertakes to pass upon a legal question apart from the regular pursuit of his calling.

Respondent concedes that an accountant may not practice law. He is obliged, therefore, in support of his claimed freedom of action in the tax field, to resort to nomenclature which eliminates the word and concept of " law " from the tax area. The excellent brief in behalf of respondent, always employing the word " taxation " instead of " tax law ", presents " taxation " as something *sui generis* and apart from law. The negation of taxation as law is made complete by presenting the question upon which respondent passed in this case, after studying a score or more of the hundreds of cases on the subject, as a question of " tax accounting " and as such a question of fact and not a question of law.

May the accountant then handle any tax problem and as a " tax consultant " entertain any tax question? Respondent appreciates his involvement and though denying taxation as law recognizes that frequently taxation is involved with law. Seeking to square his position with that fact and to allow for it, respondent states that not included in " income tax advice " by accountants is advice as to collateral questions of general law upon which tax liability may on occasions depend, such as domicile or the validity of a marriage, which questions may be conceded to lie within the exclusive competence of the lawyer.

The concession is only a nod at reality, not a full facing of the fact. Taxation, which permeates almost every phase of modern life, is so inextricably interwoven with nearly every branch of law that one could hardly pick any tax *problem* and say this is a question of pure taxation or pure tax law wholly unconnected with other legal principles, incidents or ramifications.

This does not mean, of course, that many or most questions which may arise in preparing a tax return may not be answered by an accountant handling such work. But if the question is such a problem that an outside consultant, besides the regular accountant preparing the tax return, must be called in to do legal research of the kind which was necessary in this case and to advise as to the none too clear, if not obscure, law, that consultant must be a lawyer.

When such problems arise who is to say how much " general " law is involved? Essential to the solution of any problem is recognizing all the elements. of the problem. It is a fair question whether respondent recognized all the elements in this case. Will anyone but the generally trained lawyer be competent to analyze difficult tax problems, which are beyond the regular accountant's ken, and be able to say what other law besides tax law is involved? And when confronted with any question of whether an accountant, acting as a tax consultant, is practicing law, are we to decide it upon the basis of determining whether any law besides tax law is involved in the matter upon which he was consulted?

Any attempt at such delineation and control would be wholly impractical. We must either admit frankly that taxation is a hybrid of law and accounting and, as a matter of practical administration, permit accountants to practice tax law, or, also as a matter of practical administration, while allowing the accountant jurisdiction of incidental questions of law which may arise in connection with auditing books or preparing tax returns, deny him the right as a consultant to give legal advice. We are of the opinion that the latter alternative accords to the accountant all necessary and desirable latitude and that nothing less would accord to the public the protection that is necessary when it seeks legal advice.

Respondent is most persuasive when he challenges the consistency of recognizing an accountant's right to prepare income tax returns while denying him the right to give income tax advice. As respondent says, precisely the same question may at one time arise during the preparation of an income tax

return and at another time serve as the subject of a request for advice by a client. The difference is that in the one case the accountant is dealing with a question of law which is only incidental to preparing a tax return and in the other case he is addressing himself to a question of law alone.

The preparation of an income tax return is not primarily a matter of law and generally and mainly is not a matter of law. It may usually be prepared by one having no legal knowledge, from instructions prepared for lay consumption, or by one having only incidental legal knowledge. A taxpayer should not be required, therefore, and is not required, to go to a lawyer to have a tax return prepared. It is a practical, reasonable and proper accommodation to business men and the accounting profession not only to permit accountants to prepare tax returns but to permit them, despite the risks involved, to assume jurisdiction of the incidental legal questions that may arise in connection with preparing tax returns. It is quite another thing to say that apart from preparing a tax return and from doing the accounting work in connection with the return an accountant should be permitted as an independent consultant to pass upon specific questions which are questions of law, especially when the occasion for such consultation is apt to be, as it was in this case, a particularly knotty question of law. The distinction is altogether valid and desirable. The law here, as elsewhere, is a rational and practical adjustment of conflicting interests, objectively calculated to be of the greatest public benefit.

Respondent, therefore properly, makes an appeal of public interest, under the heading: " The public would be materially inconvenienced if accountants were ousted from the income tax field." His brief states that a decision adverse to respondent would prevent accountants from continuing to act as advisers in the income tax field and would give the legal profession a monopoly in this field. The consequent inconvenience to the public is illustrated with the observation that larger corporate taxpayers can afford to retain both lawyers and accountants on a regular basis, but that it would be unreasonable to expect the average small taxpayer to do so or to bear the expense of a lawyer's education in tax accounting and administration. The argument bears analysis.

We have heard no proposal that accountants be ousted from the income tax field. It is precisely out of consideration of the interests which respondent emphasizes, that a taxpayer may, if he wishes, leave the entire preparation of the tax return to his accountant, legal incidents included, without the necessity

of engaging a lawyer. It may and probably will remain true, as respondent quotes the American Bar Association as noting, that the bulk of income tax work is not handled by lawyers. When, however, a taxpayer is confronted with a tax question so involved and difficult that it must go beyond its regular accountant and seek outside tax law advice, the considerations of convenience and economy in favor of letting its accountant handle the matter no longer apply, and considerations of public protection require that such advice be sought from a qualified lawyer. At that point, at least, the line must be drawn. The line does not impinge upon any of the business or public interests which respondent cites or oust the accountant from the tax field or prejudice him in any way in the pursuit of his profession or create any monopoly in the tax field in favor of the legal profession. It allows the accountant maximum freedom of action within the field which might be called " tax accounting " and is the minimum of control necessary to give the public protection when it seeks advice as to tax law.

The order appealed from should be reversed, respondent adjudged in contempt and fined $50 and an injunction as prayed for issued.

Dore, Cohn and Callahan, JJ., concur; Glennon, J., dissents and votes to affirm.

Order reversed, respondent adjudged in contempt and fined $50, and an injunction as prayed for issued. Settle order on notice.