Owen McGivern, J.
This is a proceeding brought pursuant to sections 90 (subd. 2) and 750 (subd. B) of the Judiciary Law wherein it is sought to. have respondent adjudged in criminal contempt and to enjoin him from specified acts claimed to constitute the illegal practice of law.
The facts are not in dispute and therefore the procedure adopted is correct (Matter of New York County Lawyers Assn. [Bercu], 273 App. Div. 524, 527-528 [1st Dept., 1948], aifd. 299 N. Y. 728 [1949]).
Respondent is a member of the Mexican Bar, but not of the New York Bar, nor is he a citizen of the United States. He *729 maintains an office in the city of New York, where he advises residents of this State on Mexican law, including the steps necessary for a divorce in Mexico, and for a fee he undertakes to institute divorce actions in Mexico. He does not deny, as alleged in the petition, that he drafts in New York the necessary papers for such actions and forwards them to correspondents in Mexico. These services he proclaims to the public via advertising media.
Respondent claims that he does not practice ‘ ‘ law ’ ’, as that word is used in sections 90 (subd. 2) and 750 (subd. B) of the Judiciary Law and in section 270 of the Penal Law. His position is that the word “ law ” as employed therein means “ New York law” and that in contradistinction thereto he practices Mexican law only. He insists that he gives no advice as to New York law or the consequences in New York of the Mexican divorces he obtains, and that he now requires all his clients in divorce matters to sign a statement that they have, at his suggestion, consulted an American attorney.
The major issue in this proceeding is whether the practice of “law”, prohibited by the statutes cited above, merely encompasses the giving of advice on matters of New York law, the appearance in New York courts, and the preparation of documents for filing here, or whether it also includes the giving to laymen of advice on foreign law and the preparation for them of documents to be filed outside of this State. (Petitioner does not seek to enjoin respondent from giving advice on Mexican law to members of the New York Bar, so it is unnecessary to consider whether such activities also constitute the practice of law.)
It is patent that the narrow construction urged by respondent is not the right one. Practicing ' ‘ law ’ ’ must perforce be reasonably interpreted to include the giving of advice as to all jural relationships and proceedings, regardless of the jurisdiction initially giving rise to such relationships and proceedings.
In the recent case of Matter of New York County Lawyers Assn. (Anonymous) (207 Misc. 698 [1955]) my learned colleague, Mr. Justice Eder, decided that activities substantially the same as those of respondent herein were inhibited by the Judiciary Law, stating at page 699: ‘1 Respondent must be deemed to be a layman in this State and not authorized to give legal advice or render legal services to persons in this State. Advice given to the public by one holding himself out to be a ‘ consultant in the law of his specialty ’, although not duly admitted to the Bar of this State, constitutes the unlawful *730 practice of law. (Matter of New York Co. Lawyers Assn. [Bercu], 273 App. Div. 524, atfd. 299 N. Y. 728.) ”
In Matter of Pace (170 App. Div. 818 [1st Dept., 1915]) members of the New York Bar were censured for assisting in New York a corporation engaged in the business of preparing Delaware incorporation papers. It was unanimously held that the acts of the corporation constituted violations of section 280 of the Penal Law, prohibiting practice of law by corporations. The court said at page 826: “ We are, therefore, clearly of the opinion that the acts which the Corporation Company of Delaware undertook to do and did do in this State constituted the practice of law herein and were in direct violation of the law of this State. Whether or not its acts were lawful in Delaware does not clearly appear and does not concern us. It is sufficient that they were unlawful here. If these acts were unlawful in this State it is clear that the respondents assisted in and furthered them and, therefore, shared in the doing of the unlawful acts. For this they cannot escape responsibility, even though they erroneously believed that they were doing no wrong.” If, as respondent contends, New York statutes dealing with the practice of law refer only to New York law, the foregoing decision would not have been correct, for it appears that all of the incorporation papers involved were prepared for filing in Delaware and were governed by Delaware law. Since the respondents in the Pace case were guilty of furthering a violation of section 280 of the Penal Law when they assisted in the preparation of documents to be filed in Delaware, it necessarily follows that respondent herein is guilty of practicing law within the meaning of section 270 of the Penal Law when he prepares pleadings in New York for filing in Mexico.
There is considerable discussion in the briefs of whether foreign law is “ law ” or “ fact ” for purposes of pleading and proof in our courts. Such discussion is wholly irrelevant. The crucial issue herein is what is meant by the cited statutes in prohibiting laymen from practicing “law”. For the reasons stated, these statutes must be held to cover any legal counsel given concerning foreign law.
The fact that respondent is an expert in Mexican law does not enhance his position. To be permitted to practice law in this State one must not only have the requisite knowledge but also must have the character and be subject to the discipline and ethics required of members of our Bar (Matter of New York County Lawyers Assn. [Bercu], supra, p. 534). Respondent admittedly does not conform to our Canon of Ethics as regards advertising and soliciting business.
*731 In Ms reply brief served on the day of argument, almost three months after the institution of this proceeding, respondent belatedly asserts a constitutional question. Respondent urges that if section 270 of the Penal Law is construed to proMbit respondent’s activities, he would be deprived of liberty and property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution and section 6 of article I of the New York Constitution.
But it is well settled that ‘1 There is no inherent right ” “to admission to the bar ” (Brooks v. Laws, 208 F. 2d 18, 28), and that “ The State has a right to prescribe the qualifications of those who practice law” (Divine v. Watauga Hosp., 137 F. Supp. 628, 632).
In In re Summers (325 U. S. 561 [1945]) the UMted States Supreme Court held that it was not a violation of due process for Illinois to deny admission to the Bar to one who refused to take the oath of allegiance to Illinois as that State interpreted such oath. This case has been cited with approval by New York courts (Matter of L’Hommedieu v. Board of Regents, 276 App. Div. 494, 504 [3rd Dept., 1950], affd. 301 N. Y. 476 [1950], affd. 342 U. S. 951 [1952]; Thompson v. Wallin, 196 Misc. 686, 695 [1949], revd. 276 App. Div. 463 [3rd Dept., 1950], affd. 301 N. Y. 476 [1950], appeal dismissed 342 U. S. 801 [1951]), in holding that it is not unconstitutional to require teachers to be loyal. As a consequence of the foregoing an- alien has no constitutional right to practice law in this jurisdiction.
Respondent also claims that it is unconstitutional to require a person who wants to practice “ Mexican law ” in New York to learn New York law and become a member of the New York Bar because there is “no reasonable relation between the evil and the purported cure ” (Matter of Stubbe v. Adamson, 220 N. Y. 459, 469 [1917]). He contends that the “ evil ” is having the public advised on foreign law by persons not sMlled therein. But the State also regards it of paramount importance that persons not subject to the disciplinary and ethical requirements of our Bar should not act as attorneys here (see Matter of Co-op. Law Co., 198 N. Y. 479, 483 [1910]). That “ evil ” is prevented by requiring admission to the New York Bar of all persons who wish to practice law in this State.
Accordingly, the respondent is adjudged in criminal contempt. He will be permanently enjoined from committing within the State of New York any of the acts described in the prayer for relief in the petition. No fine will be imposed, however.
Settle order.