3 N.Y.2d 224 (1957)
In the Matter of New York County Lawyers Association, Respondent. Lorenzo J. Roel, Appellant.
Court of Appeals of the State of New York.
Argued May 23, 1957.
Decided July 3, 1957.
Homer H. Breland for appellant.
Otto C. Sommerich, Phillip W. Haberman, Jr., and Albert R. Connelly for Association of the Bar of the City of New York, amicus curiæ.
Abraham N. Davis, Isidor Enselman, H. Randolph Guggenheimer, Albert Hirst, Joseph V. Kline and Robert H. Davis for respondent.
Alfred E. Buck and Raymond Reisler for Brooklyn Bar Association, amicus curiæ, in support of respondent's position.
Raymond Reisler for New York State Bar Association, amicus curiæ, in support of respondent's position.
CONWAY, Ch. J., DESMOND, DYE and BURKE, JJ., concur with FROESSEL, J.; VAN VOORHIS, J., dissents in an opinion in which FULD, J., concurs.
*227 FROESSEL, J.
In this proceeding, brought under subdivision B of section 750 of the Judiciary Law, appellant has been adjudged in contempt (without further penalty) and enjoined, among other things, "from practicing or assuming to practice law in any manner whatsoever, and from giving and furnishing any legal advice and opinions and rendering legal services of any kind, nature and description".
Appellant, a Mexican citizen and lawyer admitted to practice in the courts of that country, but never a citizen of the United States nor a member of the New York Bar, has maintained offices in the city of New York for a considerable period of time. He advertises in a daily newspaper as follows: "Mexican Lawyer in N. Y. Lorenzo Roel, Registered Consulate, 149 Bway. BA 7-4796".
At his offices, appellant (1) advised members of the public on Mexican law, including Mexican divorce law; (2) acted as a consultant to members of the Bar on Mexican legal matters, and (3) testified as an expert witness on Mexican law in actions and proceedings in the courts of this State. The actions of appellant in the latter two respects are not involved in this proceeding, and thus we do not pass upon them here.
Appellant does not deny that he prepares, in the city of New York, legal papers and documents which are required for the institution of divorce actions in Mexico, forwards the same to a lawyer whom he retains in Mexico to represent the client, and that he takes all the steps necessary or required to aid and assist in the procurement of such divorce; that he gives legal advice and renders legal services, within the city and State of New York, upon other matters pertaining to the laws of the Republic of Mexico; prepares and draws legal documents, contracts, agreements and other papers applicable and pertaining to the laws of Mexico; that such services and advice afore-mentioned are rendered by him within the city and State of New York and to residents and citizens of New York. Appellant also admits that he makes it a practice and a business *228 to render legal services to citizens and residents of this State to effect a divorce upon grounds not recognized by the laws of this State, and by jurisdiction effected solely by consent of one or both of the parties involved; nor does he deny the fact that he fails to advise such persons of the legal consequences in this State of their acts, the effect thereof upon their estates, the rights of such parties in respect of their children, if any, or that such proceedings are or may be contrary to the public policy of this State.
Appellant concededly does not give any advice as to New York law and, in his contract of retainer form used for the past year in divorce actions, the client is requested to state that appellant "assume[s] no responsibility concerning the lack of validity or legal effect" of the divorce decree outside Mexico, and that the client has consulted an American lawyer of his own State. Previously appellant had included in these retainer agreements a statement that he advised the client to consult a competent local lawyer.
Petitioner asserts that appellant practices law in the State of New York without being licensed to do so, in violation of section 270 of the Penal Law, and that his newspaper advertisements violate section 1452 of the Penal Law. Its position is supported by amicus briefs filed by the New York State and Brooklyn Bar Associations, as well as by Unauthorized Practice News (Vol. XXII, No. 1, March, 1956, pp. 39-41), issued by the American Bar Association's Committee on Unauthorized Practice of the Law, and partially supported by the Association of the Bar of the City of New York, which has also filed an amicus brief in favor of modification of the order below.
Appellant asserts that the fact that his practice is restricted to Mexican law makes the provisions of section 270 inapplicable to him. He urges that (1) he does not practice "law" in New York since he only gives advice and prepares instruments based on Mexican law, and Mexican law is not law in New York; (2) if he is deemed to practice "law", he practices only Mexican law and is not violating section 270 of the Penal Law, and (3) if he is subject to section 270 of the Penal Law, that statute is unconstitutional.
It seems perfectly clear that the activities engaged in by appellant constitute the practice of law (People v. Alfani, 227 N.Y. 334, 337-339; Matter of New York County Lawyers Assn. [Bercu], 273 App. Div. 524, affd. 299 N.Y. 728). *229 The fact that Mexican law must be proven as "fact" in courts of our State is wholly irrelevant (see Civ. Prac. Act, § 344-a, subd. [B], particularly the last sentence). We are here examining the nature of the activities performed by appellant, not the sources of authority of the law which he practices. Whether a person gives advice as to New York law, Federal law, the law of a sister State, or the law of a foreign country, he is giving legal advice. Likewise, when legal documents are prepared for a layman by a person in the business of preparing such documents, that person is practicing law whether the documents be prepared in conformity with the law of New York or any other law. To hold otherwise would be to state that a member of the New York Bar only practices law when he deals with local law, a manifestly anomalous statement.
This result accords with that reached in Matter of Pace (170 App. Div. 818) where attorneys assisting a Delaware corporation in filling out forms in connection with the incorporation of three companies under Delaware law were found guilty of aiding the corporation in its illegal practice of law (see, also, Matter of New York County Lawyers Assn. [Anonymous], 207 Misc. 698). It is not inconsistent with our decision in Bennett v. Goldsmith (280 N.Y. 529) in which we held, under the Special Term findings, that a person holding himself out as capable of assisting immigrants in gaining legal entry was neither representing himself as being able to perform legal services nor actually performing them.
The question here presented is whether appellant, because he is practicing exclusively foreign law, is violating section 270 of the Penal Law by practicing law in this State without being licensed to do so. Section 270, so far as pertinent, provides: "It shall be unlawful for any natural person to practice * * * as an attorney-at-law * * * or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, * * * or advertise the title of lawyer * * * in such manner as to convey the impression that he * * * conducts or maintains a law office * * * without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath".
*230 Appellant urges that the term "law" as used in this section refers to New York law alone. The cases cited in support of this contention are in nowise apt. In dealing with the question as to what constitutes the unauthorized practice of law, we have not limited the practice of law to New York law. Thus persons or corporations engaging in the practice of Federal law have been found violating the statute (Matter of New York County Lawyers Assn. [Bercu], supra [accountant giving Federal tax advice]; Matter of New York County Lawyers Assn. [Cool], 294 N.Y. 853 [Labor Relations Institute giving Labor Law advice]; People v. Lawyers Tit. Corp., 282 N.Y. 513, 519-520 [corporation preparing legal documents for use under National Housing Act]. To the same effect: Petition of Kearney, 63 So. 2d 630 [Fla.] [member of Bar not admitted in Florida not allowed to practice as Federal tax counsel]; Gardner v. Conway, 234 Minn. 468 [accountant and Federal Tax Law]; Chicago Bar Assn. v. Kellogg, 338 Ill. App. 618, and Marshall v. New Inventors' Club, 69 Ohio L. Abs. 578; 117 N. E. 2d 737 [Ohio Common Pleas] [patent consultant not a member of the Bar]). The decisions of our lower courts involving the laws of sister States (Matter of Pace, supra) and foreign countries (Matter of New York County Lawyers Assn. [Anonymous], supra) have reached the same conclusion.
Appellant argues here that the Association of the Bar and the New York County Lawyers Association have both held the course of conduct he engages in ethical, and therefore implied that it was legal. However, the opinions of the Committee on Professional Ethics of these groups have frequently called the attention of the foreign lawyer to section 270 of the Penal Law and its possible application to his activities (Opinions of Committees on Professional Ethics [Columbia Univ. Press, 1956], pp. 12, 15, 28, 41, 59, 428, 745). The Association recommended, in 1924 and 1925, that legislation be passed to change the state of the existing law and allow foreign lawyers to be licensed to practice in the limited area of their specialty, but no legislation was adopted. In 1947 the Association's committee again recommended legislation on the subject (Record of Assn. of the Bar, Vol. 2, p. 136). In the meanwhile other amendments had been made to section 270 in 1939, not affecting this question. Recently, in 1955, bills were introduced in both the Assembly and the Senate in the respect advocated by the Association of *231 the Bar in 1924, but the bills were not reported out of committee (see 1 N. Y. Law Forum 376, 377).
In the present case we are dealing with the conduct of a person who renders legal services to the public as a business. While it is true that he renders only specialized services dealing with a field in which he claims to be peculiarly competent, the competence of appellant in the practice of his specialty is not dispositive of the case before us. In many fields of endeavor laymen acquire specialized knowledge which is relevant to the practice of law in that area. Thus accountants may know a great deal about tax law and labor relations consultants much about labor law. A specialized area of competence does not, however, entitle these laymen to engage in the business of giving legal advice based on their knowledge of the subjects. A foreign lawyer who is familiar with the law of the country in which he is a lawyer is in a similar position. He is a specialist in a particular field of the law, but is nevertheless a layman in this State when he is not a member of the Bar here.
It should be noted that if we were to reverse here and find that appellant was not violating section 270 of the Penal Law, it would not matter whether or not appellant was admitted as a lawyer in the foreign jurisdiction, nor whether he was competent to advise as to that law. Protection of the members of the lay public of our State, when they seek legal advice  and that is what defendant purported to furnish  is the basis of the requirements of licensing of attorneys by the State, and this protection must be deemed to embrace whatever kind of law or legal rights the layman seeks advice on (see Matter of New York County Lawyers Assn. [Standard Tax & Management Corp.], 181 Misc. 632). To allow a Mexican lawyer to arrange the institution of divorce proceedings for a New York resident in a Mexican court, without allowing him to tell the client that the divorce might be invalid (Querze v. Querze, 290 N.Y. 13) or that it might adversely affect estate or other property rights or status in this State (Matter of Rathscheck, 300 N.Y. 346), is to give utterly inadequate protection to him (see 70 Harv. L. Rev. 1112-1113). Nor are we in anywise persuaded by the argument in the brief of the Association of the Bar that there is any difference between the right of a Mexican lawyer to act and advise the public in divorce matters and the right *232 of foreign lawyers generally to act and advise with respect to foreign law.
When counsel who are admitted to the Bar of this State are retained in a matter involving foreign law, they are responsible to the client for the proper conduct of the matter, and may not claim that they are not required to know the law of the foreign State (Degen v. Steinbrink, 202 App. Div. 477, affd. 236 N.Y. 669). Moreover, the conduct of attorneys admitted here may be regulated by our courts (Matter of Gomez-Franco, 274 App. Div. 56; Matter of Anonymous, 274 App. Div. 89; see Caldwell v. Caldwell, 298 N.Y. 146, 147), and dealt with when they engage in unethical practices; they may not plead in defense that since the matter involved related to the law in New Jersey or Connecticut or anywhere outside of our jurisdiction, they were not practicing law and were therefore immune from disciplinary action. A foreign law specialist, on the other hand, is not subject to discipline; he need not be a lawyer of any jurisdiction; he may be without good character; and his activities may not even be regulated under the present state of the law.
The complex problem posed by the activities of foreign attorneys here is a long-standing one. It may well be that foreign attorneys should be licensed to deal with clients in matters exclusively concerning foreign law, but that is solely within the province of the Legislature. Our courts are given much control over the lawyers admitted to the Bar of our State; we have no control, however, over those professing to be foreign law experts.
We see no substance in appellant's claim that section 270 of the Penal Law when applied to him deprives him of liberty and property without due process of law, in that the statute as so construed is unreasonable and serves no public purpose. Only recently the Supreme Court of the United States said: "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar", so long as such qualification has a rational connection with the applicant's fitness or competency to practice law (Schware v. Board of Bar Examiners, 353 U. S. 232, 239). The requirements that the Legislature has established as a prerequisite for admission to the Bar were enacted for the protection of the public (People v. Alfani, 227 N.Y. 334, 339, supra). *233 As heretofore pointed out, the public is as liable to injury when an unlicensed person gives advice to an individual as to his legal rights under foreign law as it is with respect to his rights under domestic law. The State need not have separate examinations for those who will specialize in real estate law, patent law, mining law, foreign law, or any other law. There are many branches of the law that a Bar examination does not reach, but the test is a general one which all qualified applicants are required to take. And so all are equally subject to the same character qualifications. Thus it is not unreasonable to require that a person desiring to engage in the practice of foreign law be admitted to the Bar here and be subject to the same rules as every other member of the Bar of this State.
Accordingly, the appeal taken as of right should be dismissed on the ground that no substantial constitutional question is involved; as to the appeal taken pursuant to leave, the order appealed from should be affirmed.
VAN VOORHIS, J. (dissenting).
The injunctive relief against respondent-appellant is too broad, in my opinion, under the order appealed from. It may well be that his activities with respect to Mexican divorces did constitute unlawful practice in New York State in violation of section 270 of the Penal Law, for the reason that the advice given or the services rendered by him had a relation to questions of status, property or other rights or obligations in New York. Nevertheless, the injunction goes so far as to restrain him from holding himself out as a Mexican attorney, or from giving any advice with respect to foreign law or the rendering of any legal services here which pertain exclusively to a foreign jurisdiction.
This is more than the opinion of the Appellate Division purports to sanction, although it affirmed without modifying the injunction granted by Special Term. Sections 270 and 271 of the Penal Law forbid, in my opinion, the practice of law in the courts of this State or by advising with respect to law binding in this State, but do not forbid advising in reference to the laws of other countries or the preparation of papers for use in the courts of other countries where questions of status, property or other rights or obligations in New York are not affected. "To hold that the word law or laws, as used in our statute *234 book, includes any other laws than such as are of force in this state, would lead to endless confusion" (People v. Sturdevant, 23 Wend. 418, 421).
Not only does the context indicate that sections 270 and 271 of the Penal Law relate to laws in force in this State, but it is also noteworthy that neither of these sections mentions advice regarding laws of other nations. It is evident that the Legislature was aware of the difference between the practice of domestic law and of foreign law, and had no difficulty in employing language relating to the practice of foreign law when that subject was intended to be covered. Thus section 1452 of the Penal Law provides: "Whoever prints, publishes, distributes or circulates * * * notice of any kind offering to advise on laws of any foreign state, nation or jurisdiction for the express purpose of procuring or aiding in procuring any divorce, severance, dissolution, or annulment of any marriage * * * is guilty of a misdemeanor."
Possible situations having no impact on New York State in which appellant is restrained from giving advice have been cited to our attention, such as advising a resident of Mexico, temporarily in New York, with reference to a business transaction or litigation pending in Mexico, or with reference to the preparation of a Mexican will; advising a Mexican national residing in New York with reference to the procedure to obtain restitution of property in Mexico seized by the Mexican Government; advising a resident of New York with reference to the preparation and execution of a power of attorney in Spanish valid under Mexican law to effect the sale of real estate valid in Mexico; or to a resident in New York in reference to procedure to be followed in Mexico to establish rights of inheritance under Mexican law. In none of such situations would the advice given or services rendered constitute practice of law within the meaning of sections 270 and 271 of the Penal Law.
The serious consequences of the full reach of this injunction should not be obscured by the ill repute of Mexican divorces. Our eyes should be open to the circumstance cited by the Association of the Bar of the City of New York in support of a modification, that the principle underlying this injunction also prevents the giving of legal advice in this State on other subjects than divorce by lawyers of other countries regarding business, financial or personal transactions anywhere in the world.
*235 We are told and have no reason to doubt that many law firms in New York have offices in other cities, such as Washington, Boston, London and Paris, and that many have foreign associates who are not licensed to practice in New York. The ethical propriety of such arrangements has always been recognized, provided that it is made clear in each jurisdiction that unlicensed foreign associates are not admitted to practice in that jurisdiction. The performance of such services by American lawyers in Great Britain, France or Germany, for example, would be precluded by the application in those jurisdictions of the doctrine now announced by the majority of this court.
When the Legislature enacted section 270 of the Penal Law, it was charged with knowledge of these prevailing customs and practices in this State and did not prohibit them (People v. Title Guar. & Trust Co., 227 N.Y. 366, 375).
In this century when the United States has become the creditor nation of the world and when the ramifications of our industrial, commercial, financial and recreational lives extend to every corner of the globe, it is especially improbable that the Legislature intended to preclude the giving of legal advice in this State to our citizens concerning these far-flung enterprises by trained lawyers from abroad who are equipped to give accurate information and opinions regarding them. The customary residential requirements for admission to the Bar would in themselves often preclude their becoming admitted to our Bar.
It is said that such practitioners may give advice here regarding foreign law provided that they are employed to do so in conjunction with some lawyer who is admitted to practice in this State, but that would be inconsistent with the principle underlying the order appealed from. It would be quite as much practicing law to advise a New York State lawyer as it would be to advise a layman, at least, unless the New York lawyer assumed responsibility for the correctness of the advice and did not act as a conduit to transmit the foreign lawyer's advice to the client. In the latter event, the New York lawyer would be merely a "stand in", and, if the theory of petitioner be sound, would be unethically splitting fees with persons engaging in illegal practice of the law. All that would be accomplished by that would be to obtain remuneration for a New York lawyer for the rendition of no service which he is qualified to perform, *236 which would tend to justify the charge that the motive of such restrictions is "feather bedding" rather than the protection or advantage of the public. The foreign lawyer would still be practicing law in this State under petitioner's theory, it seems to me, unless the New York State lawyer educated himself in the laws and customs of the countries in the world where his client is concerned, so as to be able to evaluate and indorse the views of the foreign lawyers on his own knowledge and responsibility. In that event, of course, the services of the foreign lawyer would be unnecessary. This sweeping injunction would preclude the practicing of law by foreign lawyers here in counseling New York lawyers, with whom they would divide fees paid for advice given exclusively in regard to foreign law or for services in courts of foreign countries.
The omission of the Legislature to enact statutes licensing or regulating the conduct of foreign lawyers in practicing purely foreign law in this State, does not indicate that such conduct is prohibited by sections 270 and 271 of the Penal Law, but merely that the Legislature has not seen fit to subject them to regulation. Whatever the merits of such proposed legislation, it is not for us to enact it. If foreign lawyers came under sections 270 and 271 of the Penal Law, it would stifle their activities to the detriment of the large and increasing number of our nationals who engage in transactions in foreign countries, inasmuch as it would be impossible for most of them to be admitted to practice in this State.
The order appealed from should be modified by limiting the injunction to the facts of this case, i.e., the performance by appellant of legal services for New York residents in connection with Mexican law insofar as such services involve advice with respect to the application of such law to legal status or other rights or obligations under the law of New York, and, as so modified, should be affirmed.
Order affirmed.